[No. 14617.  Department Two.  April 4, 1918.]

## E. F. Broad, Limited, *Respondent*, v. Erickson Construction Company, *Appellant*.[1]

Sales—Contract—Payment—Liability of Purchaser for Exchange and Discount. Defendant's contract with a timber brokerage concern of this state for materials to be ordered from plaintiff in Australia, the price to be paid in American money in Australia, the defendant furnishing a letter of credit to cover the price, is not a contract made between two parties in this state,. but was a contract made between a party in this state and a party in Australia, and obligates the defendant to pay the exchange and discounts constituting the cost of making the payment in Australia; and the fixing of the price in American money was only a convenient way of stating it.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 13, 1917, upon findings in favor of the plaintiff, in an action upon contract, tried to the court. Affirmed.

*Corwin S. Shank* and *H. C. Belt,* for appellant.

*Donworth & Todd,* for respondent.

Holcomb, J.—This action is one to recover a balance alleged to be due upon the purchase price of a lot of Australian hardwood, sold and delivered by respondent to appellant for use in the construction of a drydock for the United States government at Bremerton. Upon the trial of the issues, the court found, in substance: (1) That respondent sold and delivered

[1]Reported in 171 Pac. 1025.

to appellant hardwood timbers at an agreed price of $31,242.49, and that the timbers were shipped from Sidney, Australia, to Bremerton; (2) that, in connection with such shipments, respondent incurred expenses in consular invoices and cablegrams in the amount of $25.10, which expenses, according to the general custom of the trade, were to be paid by the purchaser or consignee; that appellant was indebted to respondent in that amount; (3) that appellant had paid $30,063.36 to respondent and that there was a balance owing to the respondent from appellant in the sum of $1,204.23; (4) that, according to the agreement between appellant and respondent, the timbers ordered were to be of certain dimensions as modified by the parties; that all of the timbers so ordered except 20,000 feet were up to the dimensions specified; (5) that the 20,000 feet which were not according to the dimensions specified could have been purchased at the sum of $78 per thousand; that appellant sold the 20,000 feet for $65 per thousand; (6) that appellant was damaged in the sum of $260 by reason of the fact that 20,000 feet of the timbers were not up to the dimensions ordered, leaving a balance all told due to respondent of the sum of $1,124.55. For the last mentioned sum, the trial court gave respondent judgment against appellant.

Appellant excepted to the findings numbered 3, 4, 5, and 6, and the conclusions of law in conformity therewith and supporting the judgment against it, and assigns its errors thereon.

All of these assignments involve questions of fact except as to the conclusions which followed the findings. We have carefully examined the entire record and are of the opinion that the evidence supports the findings of the trial court.

The argument of appellant upon these assignments of error is considerably involved and complicated, but we think the issues were very simple. In finding No. 3, for instance, the court found that the agreed price of the timbers amounted to $31,242.49. This was arrived at by computing the price of the short timbers at $65 per thousand and of the longer timbers at that price plus three shillings per hundred feet extra, with a still greater price on a few extra long timbers. The price of three shillings extra upon long timbers appears in invoices made by the secretary of the respondent company; but Mr. Erickson himself, the president of appellant company, testified that there was an additional price to be paid for the longer timbers though he could not say from memory how much it was in difference, but an increase in price was agreed to. This increased price on the longer timbers appeared in each and every invoice and bill of lading through the period of shipment covering a year and two months, and no objection was made when the excess charge was first made, or thereafter, until this suit.

Objection is made to the allowance of the cost of consular invoices and cablegrams. It is conceded that the duty was to be paid by appellant upon the arrival of the shipments in this country. The consular invoices issued by the United States consular officer were necessary in order that the shipments could be received in this country and for the payment of duty. While there was a dispute as to whether the timbers were to be shipped f. o. b. Bremerton, or c. i. f., that is, cost, insurance and freight, there was testimony justifying the court in finding that the shipments were to be made cost, insurance and freight, and the insurance and freight were invariably paid by prepaying upon shipment and adding it to the cost of the timbers. The

other items, consular invoices and cablegrams, were included in cost and there was testimony that that was the invariable custom in shipments from overseas. These terms would include consular invoices and cablegrams incidental to shipments as well as insurance and freight.

The contract was made by appellant with the Ehrlich-Harrison Company, a timber brokerage concern of Seattle, acting through a Mr. Abbott. The contract was for the materials to be ordered from respondent in Sidney, Australia. The price to be paid was stated in American money, but was to be paid to the respondent in Australia, and appellant agreed to and did furnish a letter of credit to cover the $60 per thousand which was to be paid to respondent in Australia. It was not, therefore, a contract made between two parties in this state, but was a contract made between a party in this state and a party in Australia. A letter of credit which appellant authorized its bank to deposit in a bank in Australia, followed by a cablegram and a letter from appellant's bank, apparently interpreted the understanding of the agreement between the parties on the part of appellant, that respondent should receive the $60 per thousand feet upon shipping documents and policy of insurance, including consular invoice with costs, insurance and freight added to the cost of the timbers. This was later confirmed by letter from appellant to the bank in Sidney.

The third assignment of error assails the fifth finding of fact, to the effect that appellant had paid no part of the sum agreed upon except the sum of $30,-063.36, leaving a balance due and owing of $1,204, based upon the contention that the court credited appellant only with the proceeds of the drafts negotiated for the advance payment at $60 per thousand con-

verted into American money at the current rate of $4.8665. It is apparent that all that the court did was to convert the total credit of money paid by appellant in Australia in English money into American money at the then current rate, which amounted to the sum found in American money. It is claimed that, by this move, appellant lost approximately $293.39 by reason of exchange and discounts on the payments made. But if appellant was to pay for the timber in Australia and was to stand the expense of making such payments, that is, charges and discounts, this loss of exchange and discounts must be borne by it. That was one of the costs and charges contemplated in the contract entered into. It is a contract whereby the payments were to be made not in the United States and in American money, but in Australia, and the fixing of the price at $60 per thousand plus cost, freight and insurance, was only a convenient way of stating the price in American money.

As to the claim of error in the finding of the court that but 20,000 feet of the timbers delivered, instead of 46,626 feet, were too small, and in finding that the cost to the appellant of buying the additional lumber was $1,560 instead of $3,925.20, the amount which appellant paid to replace the shortage in timbers, the evidence, while in conflict, justified the finding.

It would serve no useful purpose to enter into an analysis of the intricate and voluminous evidence pro and con upon these points. Suffice it to say that, while the court might have found in favor of appellant upon these questions, the evidence does not preponderate against the findings; and while it is true that appellant paid $84 per thousand for the timbers which it procured as necessary to complete its order, there was evidence which would have justified the trial court in finding that it could have procured the timbers for

$76, while the trial court allowed $78 per thousand for the 20,000 feet short.

Judgment affirmed.

ELLIS, C. J., MOUNT, and CHADWICK, JJ., concur.